# SEALED

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK, US DISTRICT COURT
NORTHERN DIST OF TX
FILED

2016 FEB 18 PM 4: 47

DEPUTY CLERK____ ℛᴀᴺ

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO.  3:15-CR559-L |
| **PATIENCE OKOROJI (01)**<br>**USANI EWAH (02)**<br>**KINGSLEY NWANGUMA  (03)**<br>**JOY OGWUEGBU (04)**<br>**KELLY ROBINETT (05) and**<br>**ANGEL CLAUDIO  (06)** | **UNDER SEAL**<br><br>**(Supersedes indictment filed December 15, 2015)** |
| **Defendants.** | |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

1.      The Medicare Program (Medicare) was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled.  Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services (CMS).  Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3.      "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency (HHA) to beneficiaries requiring home health services because of an illness or disability causing them to be homebound.

1

Payments for home healthcare medical services under Medicare Part A were typically made directly to an HHA or a provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4.      Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.   A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5.      CMS did not directly pay Medicare Part A claims submitted by Medicare certified HHAs.  CMS contracted with different companies to administer the Medicare Part A program throughout different parts of the United States.  In the State of Texas, CMS contracted with Medicare Administrative Contractors (MACs), including Trailblazer Health Enterprises (Trailblazer) and Novitas Solutions (Novitas), to administer Part A HHA claims.   As administrators, MACs received, adjudicated, and paid claims submitted by HHA providers under the Part A program for home healthcare services.

6.      The Medicare program paid for home health services only if the beneficiary qualified for home healthcare benefits.  A beneficiary qualified for home healthcare benefits only if:

      a.   the beneficiary was confined to the home, also referred to as homebound;

  b. the beneficiary was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or POC, described in Paragraph 9, below); and

  c. the determining physician signed a certification statement specifying that:

    i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

    ii. the beneficiary was confined to the home;

    iii. a POC for furnishing services was established and periodically reviewed; and

    iv. the services were furnished while the beneficiary was under the care of the physician who established the POC.

 7. Medicare Part A regulations required HHAs providing services to Medicare beneficiaries to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their beneficiaries, as well as records documenting actual treatment of the beneficiaries to whom services were provided and for whom claims for payment were submitted by the HHA.

 8. These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

 9. Among the written records required to document the appropriateness of home healthcare claims submitted under Part A of Medicare was a POC, which included the physician order for home healthcare, diagnoses, types of services, frequency of visits, prognosis, rehabilitation potential, functional limitations, activities permitted, medications, treatments,

nutritional requirements, safety measures, discharge plans, goals, and physician signature.  A POC signed and dated by the physician, or a signed and dated written prescription, or a verbal order recorded in the POC were required in advance of rendering services.  Also required was a signed certification statement by an attending physician certifying that the beneficiary was confined to his or her home and was in need of the planned home health services, and an assessment of the beneficiary's condition and eligibility for home health services, called an Outcome and Assessment Information Set (OASIS).  The OASIS also set the basis by which a HHA was paid.  The more severe a beneficiary's medical conditions, as reflected by the OASIS, the more money Medicare would pay the HHA for providing care.

10.     Medicare Part A regulations required provider HHAs to maintain medical records of each visit made by a nurse, therapist, or home healthcare aide to a beneficiary.  The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the beneficiary, any teaching and the understanding of the beneficiary, and any changes in the beneficiary's physical or emotional condition.  The home healthcare nurse, therapist, or aide was required to document the hands-on personal care provided to the beneficiary if the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury.  These written medical records were generally created and maintained in the form of "visit notes" and "home health aide notes/observations."

### TIMELY HOME HEALTH SERVICES, INC.

11.     Timely Home Health Services, Inc. (Timely) was a Texas corporation doing business at 9535 Forest Lane, Suite 119, Dallas, Texas.  Timely became a Medicare Provider in or about March 2004. Timely submitted claims to Medicare for home health services.

4

12.     From in or about January 2007 to in or about September 2015, the exact dates being unknown to the Grand Jury, Timely received payments from Medicare for claims Timely submitted to Medicare into a Chase bank account, ending in 3315.  Defendants **PATIENCE OKOROJI** and **USANI EWAH** were authorized to transact business on that bank account.

18.     From in or about January 2007 through in or about September 2015, the exact dates being unknown to the Grand Jury, Timely, which was owned by **PATIENCE OKOROJI** and **USANI EWAH,** billed Medicare approximately $13,434,550 based upon false and fraudulent claims for home health services.

## DEFENDANTS

13.     Defendant **PATIENCE OKOROJI,** a resident of Dallas County, Texas, was an Administrator, Authorized Official, Director, and co-owner of Timely.  **PATIENCE OKOROJI** was a Licensed Vocational Nurse (LVN).

14.     Defendant **USANI EWAH**, a resident of Dallas County, Texas, was an Officer, the Director of Nursing, Authorized Official and co-owner of Timely.  **USANI EWAH** was a registered nurse (RN).

15.     Defendant **KINGSLEY NWANGUMA,** a resident of Dallas County, Texas worked for Timely as a Licensed Vocational Nurse (LVN) and a patient recruiter.

16.     Defendant **JOY OGWUEGBU,** a resident of Collin County, Texas, was an RN that worked for Timely, and was Timely's Director of Nursing.

17.     Defendant **KELLY ROBINETT**, a resident of Denton County, Texas, was a doctor of osteopathic medicine that certified Timely patients for home health care.

18.     Defendant **ANGEL CLAUDIO**, a resident of Hood County, Texas, was a medical doctor that certified Timely patients for home health care.

## COUNT ONE
### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

### The Conspiracy

19.     Paragraphs 1 through 18 of the General Allegations section of this Indictment are

realleged and incorporated by reference as though fully set forth herein.

20.     From in or about January 2007 through in or about September 2015, the exact

dates being unknown to the Grand Jury, in Dallas County, in the Northern District of Texas, and

elsewhere, Defendants

**PATIENCE OKOROJI,**
**USANI EWAH,**
**KINGSLEY NWANGUMA,**
**JOY OGWUEGBU,**
**KELLY ROBINETT,** and
**ANGEL CLAUDIO**

did knowingly and willfully combine, conspire, confederate and agree with each other and others,

known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that

is, to knowingly and willfully execute a scheme and artifice to defraud a healthcare benefit

program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is,

Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations,

and promises, money and property owned by, and under the custody and control of, said

healthcare benefit program, in connection with the delivery of and payment for healthcare

benefits, items, and services.

### Purpose of the Conspiracy

21.     It was a purpose of the conspiracy for the Defendants to unlawfully enrich

themselves by, among other things, causing the submission and concealment of false and

fraudulent claims to Medicare and causing the diversion of the proceeds of the fraud for the personal use and benefit of the Defendants.

## Manner and Means of the Conspiracy

22.     The manner and means by which the Defendants sought to accomplish the purpose of the conspiracy included, among other things:

23.     Defendants **PATIENCE OKOROJI** and **USANI EWAH** would recruit and direct others to recruit Medicare beneficiaries for home health services regardless of whether the beneficiaries needed home health care, and in some cases paid recruiters, including Defendant **KINGSLEY NWANGUMA,** and others known and unknown to the grand jury, to recruit beneficiaries for home health services, regardless of whether the beneficiaries needed home health care.

24.     Defendants **PATIENCE OKOROJI**, **USANI EWAH**, and **JOY OGWUEGBU,** and co-conspirators known and unknown to the Grand Jury, would prepare or cause to be prepared false and fraudulent OASIS forms that made it appear that the beneficiaries qualified for home health services.

25.     Defendants **PATIENCE OKOROJI**, **USANI EWAH**, and **JOY OGWUEGBU,** and co-conspirators known and unknown to the Grand Jury, would prepare or cause to be prepared false and fraudulent POCs for the beneficiaries.

26.     Defendants **PATIENCE OKOROJI** and **USANI EWAH,** and co-conspirators known and unknown to the Grand Jury, would provide and cause to be provided the false and fraudulent POCs to **KELLY ROBINETT** and **ANGEL CLAUDIO** and other co-conspirators known and unknown to the Grand Jury.

27.   **KELLY ROBINETT** and **ANGEL CLAUDIO** would falsely certify that beneficiaries qualified for home health care when the beneficiaries were not under the care of **KELLY ROBINETT** or **ANGEL CLAUDIO** and did not qualify for home health care. **KELLY ROBINETT** and **ANGEL CLAUDIO** caused Medicare to be billed for these false certifications, and unnecessary home health services.  In addition, **KELLY ROBINETT** and **ANGEL CLAUDIO** caused Medicare to be billed for other services these beneficiaries did not need.

28.   Defendant **KINGSLEY NWANGUMA** would act as the home health nurse for many of the beneficiaries and would falsely document that he performed skilled nursing care when in many cases he did not perform that care and the care was medically unnecessary. Defendant **KINGSLEY NWANGUMA** would falsify his nursing notes regarding the beneficiaries to make it appear that the beneficiaries qualified for home health services when most of the time they did not.

29.   Defendants **PATIENCE OKOROJI** and **USANI EWAH,** and other co-conspirators known and unknown to the Grand Jury, submitted or caused the submission of, fraudulent claims to Medicare that **PATIENCE OKOROJI** and **USANI EWAH** knew were based upon false and fraudulent documents and that in many cases were medically unnecessary.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SIX
### Healthcare Fraud, Aiding and Abetting
### (Violation of 18 U.S.C. §§ 1347 and 2)

30.     Paragraphs 1 through 28 are realleged and incorporated by reference as if fully set forth herein.

31.     On or about the dates specified below, in the Dallas Division of the Northern District of Texas, and elsewhere, the Defendants specified below, aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicare by submitting or causing the submission of false and fraudulent claims to Medicare for home health services, including the following claims:

32.

| COUNT | Medicare Beneficiary | Defendants | Time Period of Purported Home Health Services | Approximate Medicare Claim |
|---|---|---|---|---|
| 2 | WL | USANI EWAH<br>PATIENCE OKOROJI<br>KINGSLEY NWANGUMA<br>JOY OGWUEGBU<br>ANGEL CLAUDIO | January 29, 2013 - March 29, 2013 | $1,135.00 |
| 3 | HL | USANI EWAH<br>PATIENCE OKOROJI<br>KINGSLEY NWANGUMA<br>JOY OGWUEGBU<br>ANGEL CLAUDIO | November 30, 2012 - January 28, 2013 | $1,260.00 |

| 4 | BH | USANI EWAH<br>PATIENCE OKOROJI<br>KINGSLEY NWANGUMA<br>KELLY ROBINETT | June 22, 2013 -<br>August 20, 2013 | $1,856.75 |
| 5 | LS | USANI EWAH<br>PATIENCE OKOROJI<br>JOY OGWUEGBU<br>KELLY ROBINETT | October 8, 2013 -<br>December 6, 2013 | $1,135.01 |
| 6 | SS | USANI EWAH<br>PATIENCE OKOROJI<br>JOY OGWUEGBU<br>KELLY ROBINETT | October 8, 2013 -<br>December 6, 2013 | $1,135.01 |

In violation of 18 U.S.C. §§ 1347 and 2.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), and 28 U.S.C. § 2461)

33.    Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to Defendants **PATIENCE OKOROJI, USANI EWAH, KINGSLEY NWANGUMA, JOY OGWUEGBU, KELLY ROBINETT** and **ANGEL CLAUDIO** that, in the event of conviction for any of the violations charged in Counts One through Six of the Indictment, the United States intends to forfeit all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of any such offense for which Defendants may be jointly and severally liable.

34.    The property subject to forfeiture includes, but is not limited to, all the funds on deposit in the Chase Bank Account ending in 3315 and held in the name of Timely.

35.    In the event that the property subject to forfeiture as a result of any act or omission of a Defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of Defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461.

A TRUE BILL

_____
FOREPERSON

JOHN PARKER
UNITED STATES ATTORNEY

_____
Jason Knutson
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.                    **3-15CR-559-L**

PATIENCE OKOROJI (01)
USANI EWAH (02)
KINGSLEY NWANGUMA   (03)
JOY OGWUEGBU (04)
KELLY ROBINETT (05) and
ANGEL CLAUDIO (06)

SUPERSEDING INDICTMENT

18 U.S.C. § 1349
Conspiracy to Commit Healthcare Fraud
(1 COUNT)

18 U.S.C. §§ 1347 and 2
Healthcare Fraud
(5 COUNTS)

18 U.S.C. §§ 982(a)(7), 981(a)(1)(C) and 28 U.S.C. § 2461
Forfeiture

A true bill rendered

-------------------------------------------------------------------

DALLAS                                                  FOREPERSON

Filed in open court this18th day of February, 2016.

-------------------------------------------------------------------

                                                            Clerk

**Warrants to Issue as to Defendants 5 and 6**

-------------------------------------------------------------------

UNITED STATES DISTRICT/MAGISTRATE JUDGE
CRIMINAL NO.  3:15CR559-L